UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JEAN BROWN,

    Plaintiff,

v.                                                Case No.: 8:23-cv-1506-DNF

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____

# OPINION AND ORDER

Plaintiff Jean Brown seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability and disability insurance benefits. The Commissioner filed the Transcript of the proceedings ("Tr." followed by the appropriate page number), and the parties filed legal memoranda setting forth their positions. Plaintiff also filed a reply brief. As explained below, the decision of the Commissioner is **REVERSED and REMANDED** under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

    **I.**     **Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision**

        **A.**     **Social Security Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505–404.1511, 416.905–416.911.

### B. Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Unlike findings of fact, the Commissioner's conclusions of law are not presumed valid and are reviewed under a de novo

standard. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *Maldonado v. Comm'r of Soc. Sec.*, No. 20-14331, 2021 WL 2838362, at *2 (11th Cir. July 8, 2021); *Martin*, 894 F.2d at 1529. "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066.

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. 20 C.F.R. § 404.1520(a)(4)(i), (b); 20 C.F.R. § 416.920(a)(4)(i), (b). At step two, the ALJ must determine whether the impairment or combination of impairments from which the claimant allegedly suffers is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c); 20 C.F.R. § 416.920(a)(4)(ii), (c). At step three, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii), (d); 20 C.F.R. § 416.920(a)(4)(iii), (d). If the ALJ finds the claimant's severe impairments do not meet or medically equal a listed impairment, then the ALJ must determine whether the claimant has the residual functional capacity ("RFC") to perform her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv), (e)–(f); 20 C.F.R. § 416.920(a)(4)(iv), (e)–(f).

If the claimant cannot perform past relevant work, the ALJ must determine at step five whether the claimant's RFC permits her to perform other work that exists in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), (g), 416.920(a)(4)(v), (g). At the fifth step, there are two ways in which the ALJ may establish whether the claimant is capable of performing other work available in the national economy. The first is by applying the Medical Vocational Guidelines, and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239-40 (11th Cir. 2004); *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015).

The claimant bears the burden of proof through step four. *Atha*, 616 F. App'x at 933. If the claimant meets this burden, then the burden temporarily shifts to the Commissioner to establish the fifth step. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). If the Commissioner presents evidence of other work that exists in significant numbers in the national economy that the claimant is able to perform, only then does the burden shift back to the claimant to prove she is unable to perform these jobs. *Atha*, 616 F. App'x at 993.

C.   **Procedural History**

Plaintiff applied for a period of disability and disability insurance benefits on October 11, 2019, alleging disability beginning on May 2, 2018. (Tr. 89, 205-208). The application was denied initially and on reconsideration. (Tr. 89, 103). Plaintiff requested a hearing, and on December 14, 2020, a hearing was held before

Administrative Law Anne Sprague ("ALJ"). (Tr. 30-61). On January 15, 2021, the ALJ entered a decision finding Plaintiff not under a disability from May 2, 2018, through the date of the decision. (Tr. 15-24). Plaintiff requested review of the decision, but the Appeals Council denied Plaintiff's request on February 8, 2022. (Tr. 1-5). Plaintiff appealed the decision to the District Court and on October 6, 2022, the Court reversed the decision and remanded the action for further administrative proceedings. (Tr. 1022-23). On remand, the Appeals Counsel remanded the case to an administrative judge. (Tr. 1027-30).

A second hearing was held on April 18, 2023 before the ALJ. (Tr. 987-97). On May 3, 2023, the ALJ entered a decision finding Plaintiff not under a disability from May 2, 2018, through the date of the decision. (Tr. 960-71). Plaintiff filed a Complaint (Doc. 1) on July 6, 2023, and the case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 10).

### D. Summary of ALJ's Decision

In this matter, the ALJ found Plaintiff met the insured status requirements of the Social Security Act through December 31, 2023. (Tr. 963). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 2, 2018, the alleged onset date. (Tr. 963). At step two, the ALJ found that Plaintiff had the following severe impairment: "chronic fatigue

syndrome." (Tr. 963). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). (Tr. 963).

Before proceeding to step four, the ALJ found that Plaintiff had the following RFC:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform the full range of light work as defined in 20 [C.F.R. §] 404.1567(b).

(Tr. 964).

At step four, the ALJ determined that Plaintiff was able to perform past relevant work as a teacher and an industrial technology specialist. (Tr. 968). The ALJ further found that this work does not require the performance of work-related activities precluded by Plaintiff's RFC. (Tr. 968-69). Alternatively, the ALJ continued to step five and found that considering Plaintiff's age (57 years old on the alleged disability onset date), education (at least high school), work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 969-70). Specifically, the vocational expert from the prior hearing testified that a person with Plaintiff's limitations could perform such occupations as:

    (1)   Teacher aide I, DOT 099.327-101,[1] light, skilled, SVP 6

    (2)   Teacher aide II, DOT 249.367-074, light, semi-skilled, SVP 3,

    (3)   Tutor, DOT 099.227-034, light, skilled, SVP 7

(Tr. 970). The vocational expert from the most recent hearing agreed with this assessment. (T. 970). The ALJ concluded that Plaintiff had not been under a disability from May 2, 2018, through the date of the decision. (Tr. 970).

## II. Analysis

On appeal, Plaintiff raises four issues:

(1) Whether the RFC included all impairments and limitations supported by the record;

(2) Whether substantial evidence supports the ALJ's reliance on vocational expert testimony based on whether the hypothetical posed to the vocational expert accurately included the full limiting effects of all impairments;

(3) Whether the ALJ properly found a medical opinion unpersuasive; and

(4) Whether substantial evidence supports the ALJ's subjective complaint analysis.

(Doc. 15, p. 1-2).[2] The Court begins with the ALJ's consideration of Plaintiff's subjective complaints.

---

[1] DOT refers to the *Dictionary of Occupational Titles*.

[2] In the initial brief, the stated issues were not entirely clear, but Plaintiff clarified them in the reply brief. (Doc. 15).

### A.     Subjective Complaints

Plaintiff argues that the ALJ erred in rejecting her statements about the intensity, persistence, and limiting effects of her symptoms. (Doc. 13, p. 20). Plaintiff claims that the ALJ relied on some normal findings rather than considering the entire evidence of record. (Doc. 13, p. 20). Plaintiff also claims that the ALJ's analysis of Plaintiff's daily activities is "plainly misleading" and not a basis to find her symptoms inconsistent with the medical and other evidence in the record. (Doc. 13, p. 21).

The Commissioner argues that the ALJ applied the correct standards in assessing Plaintiff's subjective complaints and provided substantial evidence in support of her findings. (Doc. 14, p. 7). The Commissioner points to medical records showing some improvement with medications, and others showing generally normal findings, such as no apparent pain, ambulating well, full strength in both arms and legs, and steady gait. (Doc. 14, p. 8-9). The Commissioner emphasizes that Plaintiff reported she was walking 2 to 3 times per week for exercise, which supports the ALJ's finding that Plaintiff had greater capacity than alleged. (Doc. 14, p. 9). The Commissioner also contends that the ALJ properly discounted Plaintiff's subjective complaints by reviewing Plaintiff's daily activities, which included frequent travel, swimming for exercise, shopping, and attending church. (Doc. 14, p. 9). Finally, the Commissioner argues that the ALJ bolstered her assessment of Plaintiff's subjective

complaints when she discussed the prior administrative medical findings and found them persuasive. (Doc. 14, p. 10). The Commissioner asserts that these medical findings support the ALJ's RFC assessment. (Doc. 14, p. 10).

Generally, a claimant may establish that she is disabled through her own testimony of pain or other subjective symptoms. *Ross v. Comm'r of Soc. Sec.*, 794 F. App'x 858, 867 (11th Cir. 2019) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)). In such a case, a claimant must establish:

> "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain."

*Id.* (quoting *Dyer*, 395 F.3d at 1210).

When evaluating a claimant's testimony, the ALJ should consider: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication to alleviate pain or other symptoms; (5) treatment other than medication for relief of pain or other symptoms; (6) any measures a claimant uses to relieve pain or other symptoms; and (7) other factors concerning a claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *Ross v. Comm'r of Soc. Sec.*, 794 F. App'x 858, 867 (11th Cir. 2019).

The ALJ should consider these factors along with all the evidence of record. *Ross*, 794 F. App'x 867. If the ALJ discredits this testimony, then the ALJ "'must clearly articulate explicit and adequate reasons for' doing so." *Id.* (quoting *Dyer*, 395 F.3d at 1210). The ALJ may consider the consistency of the claimant's statements along with the rest of the record to reach this determination. *Id.* Such findings "'are the province of the ALJ,' and we will 'not disturb a clearly articulated credibility finding supported by substantial evidence.'" *Id.* (quoting *Mitchell v. Comm'r of Soc. Sec.,* 771 F.3d 780, 782 (11th Cir. 2014)). A decision will be affirmed as long as the decision is not a "broad rejection which is not enough to enable [a reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole." *Dyer*, 395 F.3d at 1211 (quotation and brackets omitted).

A brief medical history is helpful. In 2007 – about 10 years before the alleged onset date – Plaintiff was diagnosed with Lyme disease. (Tr. 965). In April 2017, Plaintiff reported she was doing well and had a history of improvement with her Lyme disease symptoms from antibiotic treatment, but in February 2017 she stopped taking the antibiotics and was deteriorating. (Tr. 965). Plaintiff reported experiencing memory loss, word finding difficulties, balance difficulties, and tingling in her hands and feet, but continued working. (Tr. 965). In September 2017, she reported her brain was working fairly well, but she continued to experience fatigue. (Tr. 965). By March 2018, Plaintiff reported her symptoms had worsened

and by May 2018, she reported she was unable to work, and started an IV antibiotic treatment. (Tr. 965).

In the decision, the ALJ summarized Plaintiff's testimony as follows. Plaintiff stopped working in May 2018 due to vasculitis and multiple systemic infectious disease syndrome. (Tr. 964). Plaintiff reported symptoms of constant pain, fatigue, and weakness that limited her ability to complete her activities of daily living. (Tr. 964). Plaintiff reported she could only perform household tasks for about 5 to 10 minutes before needing to stop because of weakness and fatigue. (Tr. 964). The ALJ compared these statements with her statements that she attended Mass daily, could walk for a quarter of a mile (or about 30 minutes) before needing to rest, could drive for 30 minutes, and performed some errands, such as shopping. (Tr. 964). The ALJ also compared her testimony of severe limitations with Plaintiff's admission that she travelled to Hawaii in 2018 and again in 2019 for her son's engagement and wedding, and visited her grandchildren in Miami around 6 times per year for birthdays and other events. (Tr. 965). The ALJ also noted that when Plaintiff lived in California (prior to 2019), she travelled to her physician in Florida for treatment about 4 times per year. (Tr. 965).

As to Plaintiff's subjective complaints, the ALJ generally found Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but her statements concerning the intensity, persistence, and

limiting effects of these symptoms was not entirely consistent with the medical and other evidence in the record for the reasons explained in the decision. (Tr. 965). Later in the decision, the ALJ explained:

> In sum, the above residual functional capacity assessment is supported by the claimant's activities of daily living including her frequent travel, and the objective medical findings and treatment as detailed above, all of which suggest greater sustained capacity than alleged by the claimant. The claimant's subjective complaints and alleged limitations are not persuasive, and the evidence received at the hearing level supports a finding that she retains the ability to perform work at a light exertion level, as set forth above. The claimant does have some limitations as a result of her impairment, but has no limitation, impairment or combination of impairments at a disabling level of severity.

(Tr. 968).

In brief, the ALJ found Plaintiff's subjective complaints unpersuasive and inconsistent with the objective medical findings and treatment, as well as inconsistent with her daily activities, including frequent travel. While the Court may not disturb clearly articulated reasons for disregarding a Plaintiff's subjective complaints of fatigue, weakness, and pain, these reasons must be based on substantial evidence. *Ross*, 794 F. App'x 867. This finding is especially important in cases such as this one when a plaintiff complains of chronic fatigue syndrome, as this impairment may be characterized by a lack of objective findings. *De Jesus v. Comm'r of Soc. Sec.*, No. 8:19-cv-2327-T-SPF, 2021 WL 487021, at *4 (M.D. Fla. Feb. 10, 2021). Thus, the generally normal objective findings in medical records do

not tell the whole story in patients with chronic fatigue syndrome. *Id.* "'[I]t is not unusual for a person suffering from chronic fatigue syndrome to undergo physical examinations resulting within normal limits.'" *Id.* (quoting *Sabo v. Chater*, 955 F. Supp. 1456, 1462 (M.D. Fla. 1996)).[3]

The ALJ summarized Plaintiff's medical records, but mainly focused on the generally normal exam results. (Tr. 965-68). For example, when considering treating physician Shirley Hartman, M.D.[4] treatment records from June 25, 2018, September 6, 2018, October 1, 2018, December 3, 2018, and July 24, 2019, the ALJ noted that Dr. Hartman's objective findings "all state that the claimant was not in apparent pain and ambulated well, and do not include any evaluation of the claimant's motor strength or coordination." (Tr. 968). A closer look at these treatment notes contradicts some of the ALJ's findings.

In the June 25, 2018 treatment record, Plaintiff reported she spent most of her time in bed and was weak. (Tr. 489). Dr. Hartman found Plaintiff had severe fatigue,

---

[3] While the ALJ did not address SSR 14-1p in the decision, the Ruling provides instruction on how the agency should evaluate cases involving chronic fatigue syndrome. SSR 14-1p, 2014 WL 1371245 (Apr. 3, 2014). The Ruling explains that chronic fatigue syndrome "is a systemic disorder consisting of a complex of symptoms that may vary in frequency, duration, and severity." *Id.* at *1. The Ruling also explains that chronic fatigue syndrome "causes prolonged fatigue lasting 6 months or more, resulting in a substantial reduction in previous levels of occupational, educational, social, or personal activities." *Id.* at *2.

[4] Dr. Hartman treated Plaintiff from at least 2017 through 2022. (Tr. 965-68). In a November 16, 2020 Physical Capacities Evaluation, Dr. Hartman found, among other things, that Plaintiff was able to sit for 4 to 6 hours, stand 1 hour, and walk 1 hour in an 8-hour workday. (Tr. 803). She also found Plaintiff able to sit 2 hours at one time, stand 15 minutes at one time, and walk 30 minutes at one time. (Tr. 803). These limitations far exceeded the ALJ's RFC assessment.

noted her muscles ached, and her brain fog was improving. (Tr. 489). The review of symptoms showed an aching type of pain in muscles, joints, neck, arms, and legs. (Tr. 490). It also showed that Plaintiff slept 12 to 14 hours, plus took naps. (Tr. 490). In a September 2018 treatment note, Plaintiff showed some improvement with her pain and brain fog. (Tr. 482). In an October 2018 treatment note, Dr. Hartman reported Plaintiff suffered from stabbing pain in the chest, joints, and fingers and again suffered from fatigue. (Tr. 478). The review of symptoms was similar to the prior appointments. (Tr. 479). In December 2018, Dr. Hartman noted that Plaintiff felt like she "back slid" and was not doing well on the medications. (Tr. 471). Her fatigue, malaise, and weakness worsened and she felt like she had flu-like symptoms without a fever. (Tr. 471). Plaintiff's cognitive functioning and speech were extremely slow. (Tr. 471). Plaintiff reported she felt good in October, but not in December. (Tr. 471). In July 2019, Plaintiff was no longer in bed all day, and could do an activity for 1 hour, 1 to 2 days a week. (Tr. 454). She was swimming for 15 minutes, 2 times a week, but napped 1 to 2 days per week. (Tr. 454). Dr. Harman found Plaintiff's strength had generally improved, and she could participate in an activity only for 1 hour or less before she needed to rest. (Tr. 454). Plaintiff's stamina was poor. (T. 454). Plaintiff reported pain in her ankle, hips, wrist, and jaw. (Tr. 454). These records support Plaintiff's subjective complaints of extreme fatigue,

weakness, lack of stamina, and pain, even though at times her examinations were generally normal and at times she showed some improvement.

The ALJ also found that the objective physical examination from Dr. Ross was inconsistent with Plaintiff's subjective complaints. Dr. Ross treated Plaintiff from April 2021 through October 2021. (Tr. 1154-62). As the ALJ reported, Dr. Ross's examination showed Plaintiff was in no acute distress, her exams were within normal limits, her reflexes were normal, and her gait was within normal limits. (Tr. 967). A close look at Dr. Ross's treatment records shows more than just normal examinations. For example, in April 2021, Plaintiff's energy level was a 2 out of 10 and unpredictable. (Tr. 1160). He diagnosed Plaintiff with Lyme disease, noted that she had been treated repeatedly with antibiotics because of relapses, and found Plaintiff had Babesia that relapsed repeatedly, with symptoms returning within 3 to 4 weeks. (Tr. 1161). He adjusted her medications. (Tr. 1161-62). At the May 2021 appointment, Plaintiff reported her energy level was 3 to 4 out of 10, and had stopped working based on fatigue and poor cognition. (Tr. 1158). He assessed her with worsening energy and brain function with the addition of antibiotics. (Tr. 1158). He again adjusted her medications. (Tr. 1158). In July 2021, her pain level was good, but she continued to have low energy and no stamina. (Tr. 1155). He found she looked tired. (Tr. 1156). He also found she was showed some improvement. (Tr. 1157). In October 2021, Plaintiff had no major improvements and still had low

energy. (Tr. 1154). Plaintiff reported she had more energy to do essential things, but no stamina. (Tr. 1154). She was able to walk 2 to 3 times a week, and she had to move her mother to memory care which "wiped her out." (Tr. 1154). Her energy level was a 4 to 5 out of 10, but she exhausted with activity. (Tr. 1154). Her body pain was 5 out 10. (Tr. 1154). Plaintiff also suffered from neuropathy in her foot. (Tr. 1154). On examination, Dr. Ross noted that Plaintiff appeared very tired. (Tr. 1154). He decided that if Plaintiff showed improvements within a month, he would change the type of treatment. (Tr. 1155). Even though Dr. Ross found her physical examinations generally normal, he also found Plaintiff's energy levels, fatigue, and stamina to be low and required continued medication adjustments to attempt to improve her symptoms. These medical records support Plaintiff's subjective complaints.

The ALJ also discounted Plaintiff's subjective complaints based on her daily activities, specifically her frequent travel, ability to walk a quarter mile, and run some errands. (Tr. 964, 968). Plaintiff flew to Hawaii two times, once for her son's engagement and once for the wedding. (Tr. 41-43). Plaintiff clarified that whenever she is in an airport, she used a wheelchair. (Tr. 45). Her trips to Hawaii were very difficult because of having to use a wheelchair, needing to rest at least a day before participating in an activity, and needing naps between activities. (Tr 45-46). Plaintiff's husband drove her to visit her grandchildren in Miami about 6 times per

year. (Tr. 41-42). She could not do much with her grandchildren. (Tr. 46). She tried to walk once a day, but her walking was so slow, her husband had to keep up with the children. (Tr. 46). Again, she had to take naps and went to bed when the children did. (Tr. 46). After she visited them, she had to recuperate by staying in bed for a while because her symptoms of fatigue, weakness, and achiness became worse with activity. (Tr. 46-47).

Plaintiff testified that she went on small shopping trips when she felt well enough. (Tr. 40, 989-90). She used the cart as a walker. (Tr. 40). She also attended church once a week. (Tr. 40). She tried to walk about 20 minutes a day, but it hurt do to any more. (Tr. 40). Her husband did most of the cooking and cleaning. (Tr. 39). She could handle one household task if she could pace it with resting, like a load of laundry or loading the dishwasher. (Tr. 39). But mainly she slept a lot, over 12 hours a night, and usually napped due to her fatigue. (Tr. 41).

The medical records show Plaintiff's persistent complaints of fatigue, weakness, low energy, low stamina, and pain. Her medical providers have consistently diagnosed her with the effects of recurring Lyme disease, which manifests as chronic fatigue syndrome. Although her symptoms improved at times, the medical records do not show an overall permanent improvement and instead show unpredictable good periods as well as bad periods. Her medical providers attempted to relieve her symptoms through medication regimens, but have not

managed to find the correct regimen that will permanently relieve her symptoms. The ALJ glossed over the evidence that supports Plaintiff's subjective complaints, and placed undue emphasis on objective evidence or normal examination findings. The ALJ's consideration of Plaintiff's daily activities also failed to reflect that Plaintiff accomplished many of these tasks when she was feeling able, and had to accommodate her activity level with lengthy periods of recovery. After consideration of the medical and other evidence of record, the Court cannot conclude that substantial evidence supports the ALJ's consideration of Plaintiff's subjective complaints.

B.     **Remaining Issues**

Plaintiff also raises the issues of whether the RFC included all of the impairments and limitations supported by the record, whether substantial evidence supports the ALJ's reliance on the vocational expert's testimony, and whether the ALJ properly considered the medical evidence of record. Because this action is remanded to reconsider Plaintiff's subjective complaints, the Commissioner is directed to also consider the other issues raised in the briefing.

III.   **Conclusion**

For the reasons discussed above, the decision of the Commissioner is **REVERSED and REMANDED** such that this action is remanded under sentence four of 42 U.S.C. § 405(g) for the Commissioner to reconsider Plaintiff's subjective

complaints, RFC, medical and other evidence of record, and any vocational expert's testimony. The Clerk of Court is directed to enter judgment consistent with this opinion, terminate any motions and deadlines, and afterward close the file.

    **DONE** and **ORDERED** in Fort Myers, Florida on July 12, 2024.

*[signature]*
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties